UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-369-GWU

NELVA WARREN, PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff, Nelva Warren, filed her original application for Supplemental Security Income (SSI) benefits in 2001 (Tr. 46-8), which was denied in a decision by an Administrative Law Judge (ALJ) in 2003 (Tr. 12-21). After a period of reconsideration prompted by the undersigned's memorandum, order, and judgment of June 30, 2004, Warren v. Barnhart, London Civil Action No. 03-468-GWU (E.D. Ky.), the case is once again before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading

of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The initial administrative decision was remanded because the ALJ decided the case using the Medical-Vocational Guidelines in the presence of non-exertional mental restrictions, including "specific, moderate mental restrictions" noted by a state agency reviewing psychologist. (Tr. 221-2). On remand, the ALJ, after obtaining additional medical evidence and testimony, determined that the plaintiff had a "severe" combination of impairments consisting of depression, headaches, and borderline intellectual functioning, but concluded that she retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 201-6). This conclusion was based, in part, on the testimony of a vocational expert (VE).

At the most recent administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 45, GED level education, and lack of work experience could perform any jobs if she were capable of "medium" level exertion, and also had

4

06-369 Warren

the following non-exertional impairments. (Tr. 627). She: (1) could occasionally bend and stoop; (2) would be limited to low stress, unskilled work and 1 to 2 step instructions; and (3) needed to avoid close interaction with the public, co-workers, and supervisors. (Tr. 627-30). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 628-30).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

One of the plaintiff's allegations of disability was based on nervousness and depression, for which she was receiving counseling and medication from her local Comprehensive Care Center (CCC). (Tr. 616, 618-19, 621-2). As noted in the court's previous memorandum opinion, mental restrictions were given by state agency reviewer Ilze Sillers in 2002. (Tr. 132-3). Additional evidence submitted in connection with the present decision included office notes from Dr. Lea Hayag, the plaintiff's treating psychiatrist at CCC. Dr. Hayag consistently diagnosed moderate, recurrent major depression, with a Global Assessment of Functioning (GAF) score of 60. (Tr. 106, 111, 596). A GAF score in this range reflects "moderate" impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Edition--Text Revision), p. 34. The GAF score did not change over a period of two years' treatment, although the office notes reflect variable improvement and exacerbations. Dr. Hayag added the antipsychotic medication Risperdal in August,

5

2003 (Tr. 269) and increased the plaintiff's previous dosage of the antidepressant Zoloft (e.g., Tr. 106). CCC staff completed a functional assessment in June, 2003, giving the plaintiff a "slightly low" mark for interpersonal functioning, but listing her abilities in "societal/role functioning," daily living/personal care functioning, and cognitive/intellectual functioning as "slightly high" or better. (Tr. 245). A subsequent functional assessment from June 21, 2004 listed "slightly low" "societal/role functioning" and interpersonal functioning. (Tr. 592). Dr. Hayag did not sign these assessments, but did continue to endorse a GAF of 60 the next month. (Tr. 596). However, on September 16, 2004 Dr. Hayag signed a physician statement, for the purpose of receiving state assistance, indicating that her patient was "permanently and totally disabled and will never become fully employed." (Tr. 608).

      The ALJ reasonably rejected the statement of total disability by Dr. Hayag because it was not supported by the treatment records. (Tr. 202). A reasonable finder of fact could have concluded that total disability was inconsistent with the GAF scores of 60 which Dr. Hayag had repeatedly assigned, as well as with the only slightly low levels of functioning indicated by non-medical CCC staff.

      However, although the ALJ briefly referred to the state agency psychological reviewers (Tr. 202), he did not discuss the extensive "moderate" limitations they provided on reviewing the evidence in 2003 and 2004 (Tr. 311-12, 316-17), even though the importance of their opinions was one of the reasons for the court's 2004 remand (Tr. 222). While some of the "moderate" limitations listed by reviewing

06-369  Warren

psychologists Jane Brake and Edward Stodola might have been generally covered by the mental hypothetical factors, both of these expert sources listed restrictions on the plaintiff's ability to "complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 312, 317). The opinions of the state agency experts cannot simply be ignored under the Commissioner's regulations. 20 C.F.R. Section 416.927(f)(2)(i).

Since a remand will be required on this issue, the court notes in passing that the ALJ did not discuss a notation by the plaintiff's treating family physician, Dr. Richard Carter, that she should not do any lifting over 25 pounds due to her back problems. (Tr. 358). While there may be some reasonable grounds to reject this opinion, the Sixth Circuit has held that it may be reversible error for an ALJ to reject a treating physician opinion without giving good reasons, even if the decision is otherwise supported by substantial evidence. <u>Wilson v. Commissioner of Social Security</u>, 378 F. 3rd 541, 544 (6th Cir. 2004).

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 8th day of August, 2007.

**Signed By:**

<u>**G. Wix Unthank**</u> 

**United States Senior Judge**